In the Matter of BENJAMIN F. SCHWARTZ, an Attorney, Respondent.

First Department, July 14, 1922.

**Attorney and client — disciplinary proceedings — attorney suspended for six months for making affidavit used in obtaining order to show cause containing false statements assailing another attorney.**

An attorney at law who, in an affidavit used by him in obtaining an order to show cause why a new trial should no tbe granted in an action in which he represented the defendant, makes false statements concerning the conduct of the attorney for the plaintiff, seriously reflecting upon his personal and professional character, is guilty of misconduct; but, it appearing that his previous record is good, that the offensive affidavit has been withdrawn from the files, and that he has admitted his error and apologized to the attorney assailed, the ends of justice will be satisfied by a suspension from practice for six months.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie,* for the petitioner.

*Warren Leslie,* for the respondent.

CLARKE, P. J.:

The respondent was admitted to practice as an attorney and counselor at law at the June, 1911, term of the Appellate Division of the Supreme Court, Second Department. The petition alleges that the respondent has been guilty of misconduct as an attorney at law as follows:

That the respondent appeared as attorney for the defendant in

an action brought by one Mullaney against the Century Steel Company to recover commissions upon the sale of steel to the Russian government. The action was tried and resulted in a verdict for the plaintiff for $5,000. This judgment was affirmed on appeal and a motion for reargument and for leave to go to the Court of Appeals was denied. Thereafter the respondent obtained an order to show cause returnable at Special Term why the judgment should not be vacated and a new trial granted:

" Upon the ground that fraud, trickery and deceit were practiced upon the court by the attorney for the plaintiff and further upon the ground that the verdict was procured upon perjured testimony." This order was based upon the respondent's affidavit verified July 9, 1919. This affidavit among other things contained the following statements:

" In order to attempt to discredit the defendant's witnesses, and for the purpose of practicing fraud, trickery and deceit upon the Court and jury, Mr. Emley, in cross-examining Mr. Lown, the president of the Century Steel Co., of America, Inc., asked whether or not the defendant company had paid to Peskine this commission that DeBoves promised to pay to him. Objection was made to this question and instead of sustaining the objection because it was wholly immaterial to the issue in the case at bar, whether or not Peskine had or had not been paid, the Court inquired of Mr. Emley what the purpose was of this testimony. Mr. Emley at page 107 of the record, (Fols. 319 to 323) conveyed to the jury in a statement made in their presence, apparently directed to the court that it was a policy of this defendant to welch on its debts. Although the court ordered the jury to ignore the statements of counsel, at the same time, it cannot be denied that the statement of Mr. Emley had a very disastrous effect upon the defendant's case as was evidenced by the verdict which was for the sum of $4,686 with interest for the plaintiff.

" Not content with having attempted to deceive the court and jury with this statement of his the attorney for the plaintiff practiced further fraud and trickery when by device and by some methods which the deponent can fairly guess at, Mr. Emley succeeded in weaning away from the defendant, one of its former officers and directors, Mr. Perkins, who up to the very moment of the trial, was in consultation with deponent and insisted that no agreement of the kind that DeBoves testified to, was ever made to his knowledge. This witness was subpœnaed to court by the deponent for the purpose of testifying in behalf of the defendant. At the last moment, he decided to switch his testimony at the apparent instigation of Mr. Emley and he was placed upon the stand in

rebuttal as a witness for the plaintiff, whereupon Mr. Emley asked him as to whether or not he had any recollection about the Peskine transaction, to which Perkins readily replied that the defendant refused to pay this money to Peskine saying that it was graft and when that letter was written to Peskine he started on the run and is running still; as graft is punishable by death by the Russian Government, to which Peskine belonged.   (Fols. 379–380.)

" This statement was a deliberate falsehood and was concocted apparently in the office of the attorney, Mr. Emley, before the trial of the action, for the purpose of throwing dust in the eyes of the jury in order to prejudice the defendant's case.   This is apparent at the present time because while the appeal from the judgment was pending and on June 12, 1919, Mr. Emley notified the deponent by mail that he represented Peskine and demanded payment of the sum of $1185 as per exhibit A, hereto annexed.

" It is readily apparent that Mr. Emley knew the whereabouts of Peskine; knew that the testimony that Peskine was scared away, was false, and deliberately concealed from the court that Peskine is his client in order to carry out the scheme which he evidently concocted in his office for the purpose of practicing fraud and trickery upon the court and jury and by this unlawful device and scheme, to bring about a recovery for and on behalf of the plaintiffs.

" Your deponent respectfully submits that in view of the perjured testimony given upon the trial of this action and the further fact that counsel for the plaintiff did deliberately conceal a fact which was testified to falsely at the trial, and the further fact that Peskine, his client, was in league with DeBoves, Perkins, and Mr. Emley to bring about a recovery for the plaintiff, that a new trial should be granted in the interests of justice.

" Your deponent did not know of the existence of Peskine at the time of the trial, and the first and only intimation he had was when he received a letter from Mr. Emley calling upon deponent as attorney for the defendant company to send him a check for $1185, being the commission due Peskine, inasmuch as Mr. Emley is the attorney for Peskine.   The further fact that Mr. Emley, as an officer of the court, resorted to this trickery and device which so glaringly was displayed before the jury in a highly prejudicial manner and the further fact that this was not discovered by the deponent or by the defendant at any time prior to the trial of the action or subsequent to the entry of the judgment or even pending the appeal from the judgment, justice demands that a new trial be granted to the defendant."

That the respondent when he verified and submitted to the court the aforesaid affidavits had no evidence justifying the making of

any of the charges therein contained; that he made the charges with a reckless disregard of the truth when he knew or had reason to believe that they were untrue, and that the affidavit containing the charges was submitted to the court for the purpose of gaining a material advantage in the pending litigation.

The respondent having interposed an answer the matter was referred, in the usual course, to one of the official referees who reported, upon the evidence taken before him, that the affidavit upon the statements of which this proceeding was instituted was subsequently withdrawn from the files of the court by Mr. Dwyer who had been substituted as attorney for the defendant in place of the respondent; that the several accusations in the affidavit made by respondent against Mr. Emley were not sustained by any proof and the respondent is guilty of misconduct as an attorney as charged in the petition; that the respondent on the hearing admitted that he had no proof to sustain the accusations and expressed apology to Mr. Emley for having made them. The referee further stated that he deemed it a duty to the court to state that the respondent urged that when he made the affidavit he was still smarting under resentment against Mr. Emley for practices during the trial which he considered unfair.

Upon the hearing before the referee at the close of respondent's evidence he was asked the following questions by the learned official referee and replied as indicated: " Q. I read from the affidavit that you made, Mr. Schwartz, quotations which are incorporated in my questions. In your affidavit you stated: ' In order to attempt to discredit the defendant's witnesses, and for the purpose of practicing fraud, trickery and deceit upon the court and jury Mr. Emley, in cross examining Mr. Lown, the president of the Century Steel Co. of America, Inc., asked whether or not the defendant company had paid to Peskine this commission that DeBoves promised to pay to him.' Did you have any proof of the fact that in asking that question Mr. Emley practiced fraud or trickery? A No * * *. Q. Now Mr. Schwartz, with the knowledge that you may have acquired since you made the statements in the affidavit, and with the added advantage that may have accrued to you from looking at the whole situation in a cooler and calmer light than at the time you made the affidavit, have you any statement to make now with regard to the truth or falsity of that statement, so far as Mr. Emley is concerned? A. Why I cannot say, from what I know of it now, that the statement has absolutely been proved to be correct * * * Q. Now, so far as if it be not absolutely true, are you prepared to qualify that statement, whether it is true or false without the adjective ' abso-

First Department, July, 1922. [Vol. 202

lutely? ' A. Well, I, in a lawyer like way, would say that that is an untrue statement. Q. Have you any expression to make as to having made that statement? A. Yes, I am sorry I made it, and I would like to withdraw it. Q. Have you any expression to make directed to Mr. Emley personally, without regard to your conflict hitherto, for having made that statement? A. Yes. I apologize to him for having made that statement. Q. My further inquiry refers to Mr. Emley's alleged statement ' that it was the policy of this defendant to welch on its debts.' And your affidavit goes on, with immaterial matter intervening: ' not content with having attempted to deceive the court and jury with this statement of his the attorney for the plaintiff practiced further fraud and trickery.' Have you anything to say with regard to that statement, as to whether or not you had evidence of further fraud and trickery being practiced by Mr. Emley? A. No sir. I will say now I had no further evidence * * *. Q. Have you anything to say with regard to your attitude now, as to having made that statement without proof of it? A. Yes, I am sorry I made it. * * * I am sorry it was directed at him and I apologize to him for having made the statement. Q. I read further from your affidavit, referring to a previous statement in the affidavit which it is unnecessary for me to read: ' This statement was a deliberate falsehood and was concocted apparently in the office of the attorney Mr. Emley before the trial of the action, for the purpose of throwing dust in the eyes of the jury in order to prejudice the defendant's case.' Had you any proof that a falsehood was concocted in the office of Mr. Emley for the purposes you have mentioned in that statement? A. * * * I feel now that there was no proof to sustain that charge or statement that I made of and concerning him. Q. Have you anything to say as to the propriety or impropriety of your making that statement? A. I believe it was wholly improper, at this time. Q. At that time? A. I believe it was wholly improper for me at that time to have made that statement. Q. Have you anything to say as directed to Mr. Emley for having made that statement? A. Yes. I withdraw that statement, and extend my apologies to him. Q. I read further: ' It is readily apparent that Mr. Emley knew the whereabouts of Peskine; knew that the testimony that Peskine was scared away, was false, and deliberately concealed from the court that Peskine is his client in order to carry out the scheme which he evidently concocted in his office for the purpose of practicing fraud and trickery,' etc. Had you any proof that the testimony that Peskine was scared away was false and deliberately intended to deceive the court? A. No, sir. Q. Have you anything to say now with regard to the propriety or impro-

priety of your making that statement? A. I am sorry that I made it. Q. Was it proper or improper? A. Improper. Q. And true or untrue? A. Untrue. Q. Have you anything to say directed to Mr. Emley for having made that statement? A. I apologize to him for having made that statement. * * * Q. But after the lapse of time between having made the statement and this moment, are you prepared to make any statement now in regard to allowing it to remain unchallenged or uncommented upon in the record? A. I would like to withdraw all the statements I have made on record. Q. What have you to say with regard to Mr. Emley on that statement? A. With regard to Mr. Emley, I desire to say that I am sorry that I made those statements against him, and I would like to withdraw the entire statement. Q. I quote further: ' Your deponent respectfully submits that in view of the perjured testimony given upon the trial of this action and the further fact that counsel for the plaintiff did deliberately conceal a fact which was testified to falsely at the trial.' Did you have any proof that there was perjured testimony given upon the trial. * * * Did you have any proof in a legal sense, that there was perjured testimony given upon the trial? A. No, sir. Q. Did you have any proof that counsel for the plaintiff that is Mr. Emley, deliberately concealed a fact which was testified to falsely at the trial? A. No, sir. Q. Now with the knowledge that you have acquired since the trial, and the passing of the resentful feelings at that time which you say you entertained, have you anything to say as to the existence of this matter upon the record, whether it should be challenged or withdrawn? A. Withdrawn. Q. Have you anything to say with regard to Mr. Emley on that subject? A. I do not think that he had concealed any fact from the court at that time, and I am sorry that those statements were made, and apologize to him for them. Q. I quote further: ' The further fact that Mr. Emley as an officer of the court resorted to this trickery and device which so glaringly was displayed before the jury ' did you have any satisfactory proof to you that he had recourse to trickery and device? A. No, sir. Q. What have you to say if anything, at this time with regard to the propriety or impropriety of your having made that statement? A. It was improper. Q. Have you anything to say directed to Mr. Emley for having made such a statement? A. I apologize to him for those statements."

It should be borne in mind that the statements here complained of were not made during the heat of contest in court. The trial took place in December, 1918. The affidavit was verified in July, 1919, after the appeal from the judgment had been decided and after a motion for reargument or for leave to go to the Court of

Appeals had been denied.   It is the general rule that counsel is not liable to a civil action nor to criminal proceedings for anything he may have said in the course of a trial or investigation provided it was relevant or pertinent to the subject-matter of the controversy; but a member of the bar is always responsible to the court for his professional conduct.   The necessity for this judicial supervision, by way of disciplinary proceedings, is accentuated by the fact of the existence of the privilege referred to.   Unless such power is lodged in the Appellate Division, which has supervision over the conduct of the members of the profession, there would be no redress. Attorneys and counselors at law owe to each other  decent and respectful treatment, as well as to the court.   Personal professional bickerings seldom aid a client's cause.   The intemperate allegations contained in this affidavit, concededly made without foundation in fact, deserve the condemnation of the court.   The record shows that the respondent has heretofore had no charges made against him, and that, in the opinion of members of the bar who knew him, his character and conduct and standing in the profession was reputable.   The offensive affidavit has been withdrawn from the files, he has admitted his error and apologized to the attorney assailed. We approve of the finding of the learned referee that the respondent has been guilty of misconduct as attorney as charged in the petition. We are of the opinion that the ends of justice will be satisfied  by suspension for six months, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon.

LAUGHLIN, DOWLING, MERRELL and GREENBAUM, JJ., concur.

Respondent suspended for six months.    Settle order on notice.